| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>POUGHKEEPSIE DIVISION<br>------------------------------X | **NOT FOR PUBLICATION** |
| In re: : | CHAPTER 11 |
| JOHN S. McCLELLAND, : | Case No.: 03-37997 (CGM) |
| Debtor. :<br>------------------------------X | |
| JOHN S. McCLELLAND, : | |
| Plaintiff, : | |
| -against- : | |
| BRAVERMAN KASKEY & CAPRARA, :<br>P.C., BRAVERMAN DANIELS KASKEY, :<br>LTD., DAVID L. BRAVERMAN and :<br>RICHARD E. MILLER, : | |
| Defendants. :<br>------------------------------X | |

**MEMORANDUM DECISION FINDING THAT
DEBTOR'S COUNTERCLAIMS ARE CORE PROCEEDINGS**

**A P P E A R A N C E S**

Leonard I. Spielberg
HAROLD, SALANT, STRASSFIELD
 & SPIELBERG
81 Main Street
White Plains, New York
*Special Counsel for the Debtor*

Mark K. Anesh
David L. Tillem
WILSON, ELSER, MOSKOWITZ,
 EDELMAN & DICKER LLP
*Attorneys for Braverman Kaskey & Caprara, P.C.,*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

This memorandum decision sets forth the reasons for the Court's determination pursuant to 28 U.S.C. §157(b)(3)[1] that the counterclaims asserted in response to the Debtor's objection to claims are core proceedings.

## BACKGROUND

Debtor filed this case on December 19, 2003. The bar date for filing claims in the case was September 30, 2004.

The instant dispute involves the Debtor and his former attorneys, Braverman Kaskey & Caprara, P.C., Braverman Daniels Kaskey Ltd., and John E. Kaskey (collectively, the "Claimants"). Each of the Claimants filed a proof of claim in this case:

- On March 29, 2004, Braverman Kaskey & Caprara, P.C. filed unsecured claim number 4 asserting a claim of $146,604.36 for services performed between July 1, 2002 and December 31, 2002.

- Claim number 5, also filed on March 29, 2004, is an unsecured claim by Braverman Daniels Kaskey Ltd. for $362,012.52 for services performed from January 1, 2003 through December 18, 2003.

- Claim 21 was filed by John E. Kaskey on September 30, 2004, asserting an unsecured claim for $214,035 for services performed between 1999 and 2002.

Claims 4 and 5 provide a breakdown of the invoices for the underlying claims, and each breakdown indicates that the services were performed in connection with the "Longhitano Litigation." The statement attached to claim 21 asserts:

> Braverman Kaskey & Caprara, P.C., David L. Braverman and Richard E. Miller, jointly and severally possess a contingent claim against the Debtor in the amount of $214,035.00. the contingent claim represents the amount that JAF Partners,

---

[1]   28 U.S.C. § 157(b)(3) provides:

> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

Inc. has sued Braverman Kaskey & Caprara, P.C., David L. Braverman and Richard E. Miller for in Supreme Court of the State of New York, Westchester County (Index No.: 20594/02). In the suit, JAF Partners, Inc. seeks return of payments the Debtor made or caused JAF Partners, Inc. to make to Braverman Kaskey & Caprara, P.C. for services rendered.

By Objection to Claim dated March 9, 2005 (ECF Docket No. 197), Debtor seeks to expunge claims 4, 5 and 21 and also asserts three counterclaims against the Claimants. First, Debtor objects to the claims "on the grounds that the services allegedly rendered by Claimants which are the basis of Claimants' claims were rendered in a negligent manner . . . which resulted in the Debtor's sustaining damages as hereinafter complained of and not receiving a benefit." Debtor then asserts three counterclaims against the claimants: On Count I, seeking an affirmative recovery of $1,215,748; on Count II seeking disgorgement of $85,000 in fees; and on Count III, seeking affirmative recovery of $8,705,000.

Following is a summary of the facts Debtor asserts in support of his counterclaims, which is provided only for background purposes. The Court expressly makes no findings of fact as to any of the Debtor's assertions:

- The Debtor retained Claimants by retainer agreement dated June 12, 1998, to represent the Debtor in litigation arising out of Debtor's business relationship with his former business partners, Frank Longhitano and Anthony Longhitano (the "Longhitanos"). The Longhitanos are by far the largest creditor in this chapter 11 case.

- Claimants represented the Debtor in litigation with the Longhitanos from the beginning of the litigation in 1998 until a settlement was reached on December 13, 2001. The settlement agreement provided for division of various properties after completion of documents of transfer and an appraisal process.[2] After the settlement agreement was entered into, but prior to all of the terms being fulfilled, disputes arose regarding the appraisal process. The Longhitanos commenced a specific performance in the New York State Supreme Court, Westchester County on March 22, 2002.

---

[2] One of the four entities in which the Debtor was to receive 100% of the stock upon consummation of the December 31, 2001 settlement agreement was JAF Partners, Inc., the entity referenced in Claim 21. According to recitations in the June 16, 2004 settlement agreement between the Debtor and the Longhitanos, the Debtor owns one-third of the shares of JAF Partners, Inc., and the Longhitanos own the remaining two-thirds.

- In the specific performance action, the Longhitanos claimed that they discovered a separate set of books maintained by the Debtor that proved a defalcation by the Debtor of corporate assets, among other things. Debtor responded that the allegations of a second set of books was a ruse to get out of the settlement agreement, and that no second set of books existed. Debtor then commenced his own action for specific enforcement in the New York State Supreme Court, Ulster County. The two actions were consolidated in Westchester County on May 24, 2002. On March 25, 2002 and April 1, 2002, the Westchester state court issued orders prohibiting destruction of any and all corporate documents.

- Prior to the March 25, 2002 order, Debtor claims he asked attorney Richard E. Miller for advice as to whether or not to dispose of "some corporate documents which were cluttering Debtor's office." Debtor's Objection to Claim, ¶20. Debtor claims that neither Miller nor anyone else at Braverman communicated with the Court or requested judicial permission to destroy the documents; instead, Miller advised the Debtor he could destroy "voluminous copies of documents that were stored in his office … ," and these documents were taken to the dump by Debtor on March 4 and 5, 2002. Objection to Claim, ¶22. Debtor claims Braverman and Miller were negligent in this advice.

- Thereafter, Miller stipulated to allow the appointment of Justice Orlando as a special referee. Debtor claims that he was informed only that Justice Orlando would only be resolving problems in currently scheduled depositions. Debtor claims he did not know that Justice Orlando could or would conduct a spoliation hearing. Debtor claims that Braverman was negligent in stipulating to allow Justice Orlando to conduct a spoliation hearing.

- At the spoliation hearing, the Longhitanos spent five days presenting their case, including numerous witnesses, all former employees of the Debtor. For the Debtor, Miller briefly called the court-appointed received, then "proceeded for weeks, during which time Miller did nothing but mark for identification twenty-five boxes of records, more than one thousand exhibits which had been subpoenaed from the court appointed receiver. None of the marked exhibits, not a single one, was ever marked into evidence." Objection to Claim, ¶31. Thereafter, Debtor claims that Miller sought to introduce all of the documents en masse, and Judge Orlando denied the request. Debtor claims Miller then called no witnesses and presented no evidence in support of the Debtor's defenses to the Longhitanos' spoliation motion. Debtor then claims that at the conclusion of the marking of exhibits, and without consulting with the Debtor, Miller announced to the court that the Debtor "was financially unable to continue with the hearing and left the Court without calling any witnesses or introducing any of the thousand marked documents into evidence in Debtor's defense." Objection to Claim, ¶34. Debtor claims that Miller abandoned him as a client without first being relieved of his representation by either the Debtor or the state court.

- After failing to provide any evidence in defense to the spoliation motion, Debtor's answer was stricken. As a result, Debtor was deemed to admit all of the allegations in the Longhitanos' complaint, and the Court entered judgment against the Debtor in the amount of $1,215,478. Debtor further claims that the state court's judgment was too high because Braverman failed to present certain reports that would have reduced the damages by as much as $544,000 and failed to advise the court of this alleged mathematical error.

Based on the foregoing assertions, Debtor's first counterclaim is that, but for Debtor's answer having been stricken, the Debtor would have been able to show at trial that he had not maintained a second set of books, that the alleged set of books was really just an index and reference record maintained of vendor expenses, and that the other allegations (of overstating expenses and other defalcations) would have been rebutted. Thus, the entry of the $1,215,478 judgment against Debtor "was caused solely by Claimants' negligence," and Debtor now demands compensation of $1,215,748 [3] with interest that accrued until July 29, 2004.

The second counterclaim seeks disgorgement of fees of $85,000 that Debtor paid to Braverman for representation in the state court. Debtor claims that this amount should be disgorged due to Claimants' breach of fiduciary duty to Debtor.

The third counterclaim asserts that, as a direct result of the judgment against Debtor in state court, it became necessary to file this Chapter 11 proceeding. Ultimately in this bankruptcy, the Debtor settled with the Longhitanos and agreed that the Debtor would receive one third of the net value of properties that had previously been jointly owned by the Debtor and the Longhitanos. Debtor asserts that the recovery to the Debtor from this settlement, after payment of the judgment and all legal and bankruptcy expenses, is $8,705,000 less than the value of the property and cash Debtor would have received under the original 2001 settlement, and that the amount of the loss is still increasing.

---

[3]  The amount of the judgment is alleged to be $1,215,478 in ¶52 of the Objection to Claim, but compensation of $1,215,748 is demanded in ¶53 of the Objection to Claim.

Claimants filed a "Response to Objections and Answer to Counterclaims" (ECF Docket No. 222; hereafter, the "Answer"), denying the allegations in the Objection to Claim and asserting eight affirmative defenses. The seventh affirmative defense is that: "This is not a core matter within the meaning of the Bankruptcy Code on the grounds that the counterclaims asserted against [Claimants] seek damages far in excess of the related proof of claim." Answer, ¶68. The eighth "affirmative defense" is that Claimants "do not consent to the entry of a final order or final judgment by the Bankruptcy Court." Based upon the affirmative defenses raised in the Answer, the Court asked the parties to brief the core/non-core issue.

## DISCUSSION

The Second Circuit explained the significance of the core/non-core designation in *In re Orion Pictures Corp.*, 4 F.3d 1095, 1100-1101 (2d Cir. 1993):

> In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court ruled that Congress could not constitutionally empower a non-Article III bankruptcy court with the authority to adjudicate a state breach-of-contract action, based on a pre-petition contract, brought by a debtor against a defendant <u>that had not filed a claim with the bankruptcy court</u>. The court held that "our Constitution reserves for Art. III courts" traditional functions of the judicial power such as adjudicating state breach-of-contract claims like that by the debtor against the defendant. *Id.* at 84, 102 S.Ct. 2858, 73 L.Ed.2d 598. Accordingly, the Court in Marathon found unconstitutional Congress's broad grant of jurisdiction to the bankruptcy courts to adjudicate such claims in the Bankruptcy Act of 1978.
>
> In response to Marathon, Congress enacted 28 U.S.C. § 157... . Section 157 classifies matters as either "core proceedings," which the bankruptcy court may "hear and determine" and on which the court "may enter appropriate orders and judgments," § 157(b)(1), or "non-core proceedings," which the bankruptcy court may hear, but for which the bankruptcy court is only empowered to submit proposed findings of fact and conclusions of law to the district court for de novo review, § 157(c)(1).

(emphasis added) (citations omitted).

The Debtor argues that the counterclaims are core proceedings because they are "inextricably intertwined and inseparable from the very claims to which they relate," and that

absent the counterclaims, the trial on the claims objections would implicate all of the legal and factual issues asserted in the counterclaims. Debtor's "Memorandum as to 'Core' Status of the Counterclaim [sic]," p. 6. Furthermore, Debtor claims that, if proven, malpractice would be a complete defense to Claimants' claims in the bankruptcy case, and that trial of the counterclaims in another forum would be a waste of judicial resources and would give rise to the possibility of inconsistent results. *Id.* at 10.

Of course, as Debtor points out, counterclaims are enumerated as core proceedings in the text of 28 U.S.C. § 157(b). Section 157(b) of title 28 sets forth a non-exclusive list of 15 types of core proceedings, including in 28 U.S.C. § 157(b)(2)(C), "counterclaims by the estate against persons filing claims against the estate." Thus, Claimants' reliance on *Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635 637 (S.D.N.Y. 1996); *In re Green*, 200 B.R. 296 (S.D.N.Y. 1996) and *In re Luis Elec. Contracting Corp.*, 100 B.R. 155 (E.D.N.Y. 1989) is misplaced, because although those case held claims for malpractice, breach of fiduciary duty and breach of contract to be non-core, the defendants in those cases had not filed a proof of claim against the debtor, and so Section 157(b)(2)(C) was not implicated in those cases.

Claimants argue that the counterclaims are traditional common-law causes of action that are merely permissive counterclaims, under Fed. R. Bankr. P. 7013. Claimants also argue that Section 157(b)(2)(C) was not intended to reach counterclaims where, as in this case, the Debtor seeks affirmative relief against the Claimants that is more than 20 times the amount in the proofs of claim.

Even traditionally non-core claims can become core claims where they arise from the same operative facts as the basis for the proof of claim. This was the case in *In re Iridium Operating LLC*, 285 B.R. 822, 830 (S.D.N.Y. 2002), in which the creditors' committee

commenced litigation against Motorola, a creditor that had filed various proofs of claim in the case, including claims for indemnification and contribution under a contract known as the "Space System Contract." Motorola moved to withdraw the reference from the bankruptcy court. Judge Pauley ruled:

> Here, it is undisputed that five of the Committee's claims in the instant adversary proceeding are core. Motorola argues that the remaining five non-core claims are inextricably intertwined with the core claims, and thus the entire proceeding should be withdrawn from the bankruptcy court. Conversely, the Committee contends that the five non-core claims became core because of Motorola filing of proofs of claim, claims for administrative expenses, and Motorola's assertion of the affirmative defense of set-off/recoupment. This Court agrees with the Committee. The five traditionally non-core claims all concern either breaches of the Space System Contract, or fiduciary torts committed during the acts that were alleged to be the breaches of the Space System Contract. Accordingly, all of the claims in this adversary proceeding arise from the same operative facts as the core claims and Motorola's proofs of claim, administrative expenses, and affirmative defenses. Thus, they are core claims.

As in *Iridium*, the allegations on both sides arise from the same core of facts. The Claimants seek compensation related to services performed between 1999 and 2002 in connection with the litigation between the Debtor and the Longhitanos. The Debtor's counterclaims are for alleged negligence and malpractice during the same time period, and in connection with the very services for which the Claimants seek payment from the bankruptcy estate. In other words, all of the disputes arise from the same transaction or occurrence.

For this reason, the Court also rejects Claimants' argument that the counterclaims are permissive in nature. Fed. R. Civ. P. 13, which is applicable in adversary proceedings pursuant to Fed. R. Bankr. P. 7013, distinguishes between compulsory and permissive counterclaims. Rule 13 states in relevant part:

> **(a) Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, <u>if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the</u>

- 8 -

> presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.
>
> **(b) Permissive Counterclaims.** A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

(emphasis added).

> Under Rule 13(a), the "crucial" inquiry is whether there exists a "logical relationship" between the claim and counterclaim. This test is not given to wooden or formalistic application; rather, a court should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds. In considering these factors, a court must remain cognizant that the purpose of Rule 13(a) is to conserve judicial resources by promoting the resolution in a single action of all claims which arise from a common factual background.

*In re Solis*, 137 B.R. 121, 126 (Bankr. S.D.N.Y. 1992) (internal quotations omitted). *See also In re University Medical Center*, 973 F.2d 1065, 1086 (3d Cir. 1992) ("The operative question in determining whether a claim is a compulsory counterclaim is whether it bears a 'logical relationship' to the opposing party's claim.").

Claimants refer the Court to *In re Complete Management, Inc.*, 2002 WL 31163878 (S.D.N.Y., Sept. 27, 2002). In that case, creditor Arthur Andersen sought withdrawal of the reference of a class action complaint filed on behalf of the debtor's shareholders. The class action alleged that Arthur Andersen's audits of the debtor's financial statements were deficient and failed to detect reporting errors and sought damages in excess of $70 million. Arthur Andersen had previously filed a proof of claim for payment of approximately $1 million for performing the audit services that were the subject of the class action. Judge Buchwald assumed that the class action may have been "technically a core proceeding," but withdrew the reference

based upon other facts that favored discretionary withdrawal, including the fact that a related securities litigation was already pending before Judge Buchwald. 2002 WL 31163878 at *2-3.

*In re Complete Management* has little bearing on whether or not this proceeding is core, which is the sole issue before the Court. Should the Claimants move for withdrawal of the reference, the status of the proceeding as core or non-core is one of several factors that will be considered by the District Court. *See In re Orion Pictures Corp.*, 4 F.3d at 1101 (2d Cir. 1993) ("District courts in this circuit have considered a number of factors in evaluating cause: whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law."). In *In re Complete Management*, the reference was withdrawn not based upon the core/non-core determination but upon "the other factors to be considered". 2002 WL 31163878 at *2.

Moreover, *In re Complete Management* was distinguished in *In re CBI Holding Co., Inc.*, 311 B.R. 350 (S.D.N.Y. 2004), in which counterclaims for accounting malpractice were held to be core proceedings although the counterclaims were far in excess of the proof of claim filed by the creditor. The creditor in that case, Ernst & Young, filed a proof of claim in the debtor's bankruptcy proceeding for unpaid auditing and consulting services totaling $210,850. After confirmation of the debtor's plan, the disbursing agent objected to the claim and asserted various counterclaims against Ernst & Young in excess of $70 million, including claims that arose in favor of the debtor for negligence, breach of contract and fraud. Judge Wood found the debtor's claims for negligence, breach of contract and fraud were core because they were "factually and legally interconnected with Ernst & Young's Proof of Claim" and with the debtor's objection to that claim. 311 B.R. at 362. In addition, the court found it significant that the claims of fraud in

connection with reaudit work would "affect the allowance or disallowance of Ernst & Young's Proof of Claim," which concerned fees due for services performed in connection with the reaudit; the debtor's remaining claims were "based upon the same operative facts as the reaudit fraud claim and expungement claim, and were filed in response to Ernst & Young's Proof of Claim, which is based on the same set of facts". 311 B.R. at 362-363.

In this Court's opinion, limitation on the core status of counterclaims should focus on the degree to which the counterclaims arise from the same transaction or occurrence as the proof of claim, and not the extent to which the amount demanded in the counterclaim exceeds the amount in the proof of claim. Focus on the amounts of the proofs of claim versus the amounts in the counterclaim ignores the more important question of the relationship between the claims.[4] In this case, the Court finds that the counterclaims are core because they arise from the same transaction as the proofs of claim filed by Claimants, and they are logically related. The Court also finds that it would conserve judicial resources to try the objections to claim and the counterclaims together.

Although it does not implicate the bankruptcy court's initial core/non-core determination, Claimants urge that "[w]ithdrawing the reference at this stage in the adversary proceeding will 'further rather than undermine judicial economy'" because Claimants will insist on their right to a jury trial. Claimants' "Memorandum of Law in Support of Designation of Debtor's Counterclaims as Non-Core," p. 8. (citing *In re FMI Forwarding Co.*, 2004 WL 1348956 at *6 (S.D.N.Y. June 16, 2004)). In general, U.S. Const. amend. VII guarantees the right to a jury trial if the cause of action is legal in nature and involves a matter of private right. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). It does not necessarily follow that no

---

[4] Making the core/non-core determination based upon demand amounts would also seem to be a disfavored because the amounts demanded in counterclaims are sometimes arbitrary or estimated and may have no resemblance to the amount of damages ultimately awarded.

jury trial can be held in a core proceeding, because the analyses used to determine whether a proceeding is core and whether a defendant has a right to a jury trial are not the same. However, the Supreme Court has held:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. As such, there is no Seventh Amendment right to a jury trial.

*Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990). *See also In re Complete Management*, 311 B.R. at 365 (creditor who files proof of claim subjects itself to bankruptcy court's equitable jurisdiction even if adversary proceeding concerns traditionally legal claims); *In re Coated Sales, Inc.*, 119 B.R. 452, 457-458 (Bankr. S.D.N.Y. 1990) ("The Court in *Granfinanciera* was abundantly clear in stating that had petitioners in that case filed claims against the estate, they would have lost their right to a jury trial.") (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. at 58-59).

> By filing a claim against a bankruptcy estate, a creditor is seeking to recover a portion of that estate and, as a result, has placed any dispute with the debtor which will affect the allowance of that claim into the arena of public rights, that is, the restructuring of the debtor-creditor relationship. Furthermore, such disputes are integrally related to the allowance or disallowance of that filed claim and are equitable in nature.

*In re Brokers, Inc.*, 2005 WL 1388023 at *2 (Bankr. M.D.N.C. June 6, 2005).

Even where defendants are entitled to a jury trial, the reference need not be withdrawn immediately. *See, e.g., In re Enron Corp.*, 317 B.R. 232 (S.D.N.Y. 2004) (district court would not withdraw reference of "core" claims, despite fact that defendant had demanded jury trial, given that proceeding was still in early stages).

> A rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts. Although withdrawal is an important component of this scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.

*In re Kenai Corp.*, 136 B.R. 59, 61 (S.D.N.Y. 1992). "Courts have also recognized that it serves the interests of judicial economy and efficiency to keep an action in Bankruptcy Court for the resolution of pre-trial, managerial matters, even if the action will ultimately be transferred to a district court for trial." *In re Enron Corp.*, 295 B.R. 21, 28 (S.D.N.Y. 2003).

## CONCLUSION

The foregoing memorandum decision constitutes the opinion of the Court. The Court will enter a separate scheduling order governing discovery and the deadlines and procedures for filing dispositive motions and a joint pre-trial order.

Dated: Poughkeepsie, New York
July 26, 2005

                                                                             /s/ Cecelia Morris
                                                                                U. S. B. J.