| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>POUGHKEEPSIE DIVISION<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X<br>In re:                                                          :<br><br>   JOHN S. McCLELLAND,                          :<br><br>                              Debtor.                     :<br><br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X<br>JOHN S. McCLELLAND,                            :<br><br>                              Plaintiff,                    :<br><br>      -against-                                              :<br><br>BRAVERMAN KASKEY & CAPRARA,      :<br>P.C., BRAVERMAN DANIELS KASKEY, :<br>LTD., DAVID L. BRAVERMAN and            :<br>RICHARD E. MILLER,                              :<br><br>                              Defendants.                :<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X | **FOR PUBLICATION**<br><br>CHAPTER 11<br><br>Case No.: 03-37997 (CGM) |

**MEMORANDUM DECISION ON REQUEST OF BRAVERMAN
KASKEY & CAPRARA, P.C., BRAVERMAN DANIELS KASKEY LTD.,
DAVID L. BRAVERMAN AND RICHARD E. MILLER FOR JURY TRIAL**

**A P P E A R A N C E S**

Leonard I. Spielberg
HAROLD, SALANT, STRASSFIELD
   & SPIELBERG
81 Main Street
White Plains, New York
*Special Counsel for the Debtor*

Mark K. Anesh
David L. Tillem
WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP
*Attorneys for Braverman Kaskey & Caprara, P.C.,*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

By memorandum decision dated July 26, 2005 (ECF Docket No. 244), the Court determined that the Debtor's objection to the claims of Debtor's pre-petition attorneys, Braverman Kaskey & Caprara, P.C., Braverman Daniels Kaskey Ltd., and John E. Kaskey (collectively, the "Claimants") and the counterclaims asserted by the Debtor as part of Debtor's objection to those claims are core proceedings. Part of the Court's reasoning for holding that the claims and counterclaims are core is the finding that the counterclaims arise from the same transaction as the proofs of claim, and they are logically related. Thus, it is this Court's opinion that it will conserve judicial resources to try the objections to claim and the counterclaims together. Discussed, but not decided, by the July 26, 2005 decision, was whether or not the Claimants are entitled to a jury trial on any of the claims or counterclaims. Thereafter, on August 5, 2005, Claimants filed a brief in support of their request for a jury trial (ECF Docket No. 248; the Jury Trial Brief), and Debtor filed a brief in opposition to Claimants' motion (ECF Docket No. 250).

For the reasons set forth below, the Court now determines that because the claims and counterclaims are "integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction," Claimants are not entitled to a jury trial. *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990).

## BACKGROUND

Debtor filed this case on December 19, 2003. By order dated August 24, 2005, the Court confirmed Debtor's Second Amended Plan of Reorganization Dated as of May 27, 2005, as Amended.

Each of the Claimants filed a proof of claim in this case:

- On March 29, 2004, Braverman Kaskey & Caprara, P.C. filed unsecured claim number 4 asserting a claim of $146,604.36 for services performed between July 1, 2002 and December 31, 2002.

- Claim number 5, also filed on March 29, 2004, is an unsecured claim by Braverman Daniels Kaskey Ltd. for $362,012.52 for services performed from January 1, 2003 through December 18, 2003.

- Claim 21 was filed by John E. Kaskey on September 30, 2004, asserting an unsecured claim for $214,035 for services performed between 1999 and 2002.

Claims 4 and 5 provide a breakdown of the invoices for the underlying claims, and each breakdown indicates that the services were performed in connection with the "Longhitano Litigation." The statement attached to Claim 21 asserts:

> Braverman Kaskey & Caprara, P.C., David L. Braverman and Richard E. Miller, jointly and severally possess a contingent claim against the Debtor in the amount of $214,035.00. The contingent claim represents the amount that JAF Partners, Inc. has sued Braverman Kaskey & Caprara, P.C., David L. Braverman and Richard E. Miller for in Supreme Court of the State of New York, Westchester County (Index No.: 20594/02). In the suit, JAF Partners, Inc. seeks return of payments the Debtor made or caused JAF Partners, Inc. to make to Braverman Kaskey & Caprara, P.C. for services rendered.

By Objection to Claim dated March 9, 2005 (ECF Docket No. 197), Debtor seeks to expunge Claims 4, 5 and 21 and also asserts three counterclaims against the Claimants. First, Debtor objects to the claims "on the grounds that the services allegedly rendered by Claimants which are the basis of Claimants' claims were rendered in a negligent manner . . . which resulted in the Debtor's sustaining damages as hereinafter complained of and not receiving a benefit."

As part of Debtor's objection to these claims, Debtor asserts three counterclaims against the Claimants. The first and third counterclaims seek affirmative recovery of $1,215,748 and $8,705,000 based on allegations of loss due to Claimants' negligence and legal malpractice. The second counterclaim seeks disgorgement of $85,000 that Claimants previously received in fees.

Following is a summary of the facts Debtor asserts in support of his counterclaims, which is provided only for background purposes. The Court expressly makes no findings of fact as to any of the Debtor's assertions:

- The Debtor retained Claimants by retainer agreement dated June 12, 1998, to represent the Debtor in litigation arising out of Debtor's business relationship with his former business partners, Frank Longhitano and Anthony Longhitano

- 3 -

(the "Longhitanos"). The Longhitanos are by far the largest creditor in this chapter 11 case.

- Claimants represented the Debtor in litigation with the Longhitanos from the beginning of the litigation in 1998 until a settlement was reached on December 13, 2001. The settlement agreement provided for division of various properties after completion of documents of transfer and an appraisal process.[1] After the settlement agreement was entered into, but prior to all of the terms being fulfilled, disputes arose regarding the appraisal process. The Longhitanos commenced a specific performance in the New York State Supreme Court, Westchester County on March 22, 2002.

- In the specific performance action, the Longhitanos claimed that they discovered a separate set of books maintained by the Debtor that proved a defalcation by the Debtor of corporate assets, among other things. Debtor responded that the allegations of a second set of books was a ruse to get out of the settlement agreement, and that no second set of books existed. Debtor then commenced his own action for specific enforcement in the New York State Supreme Court, Ulster County. The two actions were consolidated in Westchester County on May 24, 2002. On March 25, 2002 and April 1, 2002, the Westchester state court issued orders prohibiting destruction of any and all corporate documents.

- Prior to the March 25, 2002 order, Debtor claims he asked attorney Richard E. Miller for advice as to whether or not to dispose of "some corporate documents which were cluttering Debtor's office." Debtor's Objection to Claim, ¶20. Debtor claims that neither Miller nor anyone else at Braverman communicated with the Court or requested judicial permission to destroy the documents; instead, Miller advised the Debtor he could destroy "voluminous copies of documents that were stored in his office ... ," and these documents were taken to the dump by Debtor on March 4 and 5, 2002. Objection to Claim, ¶22. Debtor claims Braverman and Miller were negligent in this advice.

- Thereafter, Miller stipulated to allow the appointment of Justice Orlando as a special referee. Debtor claims that he was informed only that Justice Orlando would only be resolving problems in currently scheduled depositions. Debtor claims he did not know that Justice Orlando could or would conduct a spoliation hearing. Debtor claims that Braverman was negligent in stipulating to allow Justice Orlando to conduct a spoliation hearing.

- At the spoliation hearing, the Longhitanos spent five days presenting their case, including numerous witnesses, all former employees of the Debtor. For the Debtor, Miller briefly called the court-appointed receiver, then "proceeded for weeks, during which time Miller did nothing but mark for identification twenty-five boxes of records, more than one thousand exhibits which had been subpoenaed from the court appointed receiver. None of the marked exhibits, not a single one, was ever marked into evidence." Objection to Claim, ¶31. Thereafter, Debtor claims that Miller sought to introduce all of the documents

---

[1] One of the four entities in which the Debtor was to receive 100% of the stock upon consummation of the December 31, 2001 settlement agreement was JAF Partners, Inc., the entity referenced in Claim 21. According to recitations in the June 16, 2004 settlement agreement between the Debtor and the Longhitanos, the Debtor owns one-third of the shares of JAF Partners, Inc., and the Longhitanos own the remaining two-thirds.

- 4 -

- en masse, and Judge Orlando denied the request. Debtor claims Miller then called no witnesses and presented no evidence in support of the Debtor's defenses to the Longhitanos' spoliation motion. Debtor then claims that at the conclusion of the marking of exhibits, and without consulting with the Debtor, Miller announced to the court that the Debtor "was financially unable to continue with the hearing and left the Court without calling any witnesses or introducing any of the thousand marked documents into evidence in Debtor's defense." Objection to Claim, ¶34. Debtor claims that Miller abandoned him as a client without first being relieved of his representation by either the Debtor or the state court.

- After failing to provide any evidence in defense to the spoliation motion, Debtor's answer was stricken. As a result, Debtor was deemed to admit all of the allegations in the Longhitanos' complaint, and the Court entered judgment against the Debtor in the amount of $1,215,478. Debtor further claims that the state court's judgment was too high because Braverman failed to present certain reports that would have reduced the damages by as much as $544,000 and failed to advise the court of this alleged mathematical error.

Based on the foregoing assertions, Debtor's first counterclaim is that, but for Debtor's answer having been stricken, the Debtor would have been able to show at trial that he had not maintained a second set of books, that the alleged set of books was really just an index and reference record maintained of vendor expenses, and that the other allegations (of overstating expenses and other defalcations) would have been rebutted. Thus, the entry of the $1,215,478 judgment against Debtor "was caused solely by Claimants' negligence," and Debtor now demands compensation of $1,215,748 [2] with interest that accrued until July 29, 2004.

The second counterclaim seeks disgorgement of fees of $85,000 that Debtor paid to Braverman for representation in the state court. Debtor claims that this amount should be disgorged due to Claimants' breach of fiduciary duty to Debtor.

The third counterclaim asserts that, as a direct result of the judgment against Debtor in state court, it became necessary to file this Chapter 11 proceeding. Ultimately in this bankruptcy, the Debtor settled with the Longhitanos and agreed that the Debtor would receive one third of the net value of properties that had previously been jointly owned by the Debtor and the Longhitanos. Debtor asserts that the recovery to the Debtor from this settlement, after

---

[2] The amount of the judgment is alleged to be $1,215,478 in ¶52 of the Objection to Claim, but compensation of $1,215,748 is demanded in ¶53 of the Objection to Claim.

- 5 -

payment of the judgment and all legal and bankruptcy expenses, is $8,705,000 less than the value of the property and cash Debtor would have received under the original 2001 settlement, and that the amount of the loss is still increasing.

## DISCUSSION

In the Jury Trial Brief, Claimants state: "But for the filing of a proof of claim subjecting [Claimants] to the so called 'equitable jurisdiction' of the bankruptcy court, the [Claimants] would be entitled to a jury trial pursuant to the Seventh Amendment." Jury Trial Brief, p. 2. The Claimants do not consent to this Court's jurisdiction over the counterclaims and have requested a jury trial "on all claims and all issues triable as of right asserted by the Debtor." *Id.*

In general, U.S. Const. amend. VII guarantees the right to a jury trial if the cause of action is legal in nature and involves a matter of private right. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). The Supreme Court has held:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. . . . If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. . . . In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equity jurisdiction*. . . . As such, there is no Seventh Amendment right to a jury trial.

*Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990) (emphasis in original) (citations omitted). *See also In re Complete Management*, 311 B.R. at 365 (creditor who files proof of claim subjects itself to bankruptcy court's equitable jurisdiction even if adversary proceeding concerns traditionally legal claims); *In re Coated Sales, Inc.*, 119 B.R. 452, 457-458 (Bankr. S.D.N.Y. 1990) ("The Court in *Granfinanciera* was abundantly clear in stating that had petitioners in that case filed claims against the estate, they would have lost their right to a jury trial.") (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. at 58-59).

- en masse, and Judge Orlando denied the request. Debtor claims Miller then called no witnesses and presented no evidence in support of the Debtor's defenses to the Longhitanos' spoliation motion. Debtor then claims that at the conclusion of the marking of exhibits, and without consulting with the Debtor, Miller announced to the court that the Debtor "was financially unable to continue with the hearing and left the Court without calling any witnesses or introducing any of the thousand marked documents into evidence in Debtor's defense." Objection to Claim, ¶34. Debtor claims that Miller abandoned him as a client without first being relieved of his representation by either the Debtor or the state court.

- After failing to provide any evidence in defense to the spoliation motion, Debtor's answer was stricken. As a result, Debtor was deemed to admit all of the allegations in the Longhitanos' complaint, and the Court entered judgment against the Debtor in the amount of $1,215,478. Debtor further claims that the state court's judgment was too high because Braverman failed to present certain reports that would have reduced the damages by as much as $544,000 and failed to advise the court of this alleged mathematical error.

Based on the foregoing assertions, Debtor's first counterclaim is that, but for Debtor's answer having been stricken, the Debtor would have been able to show at trial that he had not maintained a second set of books, that the alleged set of books was really just an index and reference record maintained of vendor expenses, and that the other allegations (of overstating expenses and other defalcations) would have been rebutted. Thus, the entry of the $1,215,478 judgment against Debtor "was caused solely by Claimants' negligence," and Debtor now demands compensation of $1,215,748 [2] with interest that accrued until July 29, 2004.

The second counterclaim seeks disgorgement of fees of $85,000 that Debtor paid to Braverman for representation in the state court. Debtor claims that this amount should be disgorged due to Claimants' breach of fiduciary duty to Debtor.

The third counterclaim asserts that, as a direct result of the judgment against Debtor in state court, it became necessary to file this Chapter 11 proceeding. Ultimately in this bankruptcy, the Debtor settled with the Longhitanos and agreed that the Debtor would receive one third of the net value of properties that had previously been jointly owned by the Debtor and the Longhitanos. Debtor asserts that the recovery to the Debtor from this settlement, after

---

[2] The amount of the judgment is alleged to be $1,215,478 in ¶52 of the Objection to Claim, but compensation of $1,215,748 is demanded in ¶53 of the Objection to Claim.

- 5 -

relations. *If an equitable reordering cannot be accomplished without resolution of what would otherwise be a legal dispute, then that dispute becomes an essential element of the broader equitable controversy.*" *Id.* (emphasis added).

Although *Germain* directly addressed the issues in this case, it did so in a different factual context. In that case, the Chapter 7 trustee filed an action for, among other things, tortious interference with debtor's business, breach of the contractual duty of good faith, unfair or deceptive business practices. The Second Circuit upheld the Chapter 7 trustee's request for a jury trial because although the defendant had filed a proof of claim, the trustee's action was "not part of the claims-allowance process" and was not "integral to the reordering of relations among the parties." *Id.* at 1329.

*In re Frost*, 145 B.R. 878 (Bankr. W.D. Mich. 1992) is closer factually to the case at bar. In *Frost*, the debtor's pre-petition attorney filed a proof of claim in the debtor's bankruptcy estate for unpaid legal fees incurred in the course of state court litigation. The debtor objected to the claim and asserted counterclaims for negligence and breach of contract, seeking compensatory damages. 145 B.R. at 879. In *Frost*, the debtor demanded a jury trial, and the bankruptcy court denied the request because the same conduct formed the basis for the proof of claim and the counterclaims, and both required "examination of the overall debtor-creditor relationship." *Id.* at 882. Although the counterclaims were probably legal in nature, the court viewed the issue as "whether determination of the Debtor's adversary proceeding is an integral part of the claims allowance process which as stated by the Supreme Court is triable only in equity." *Id.* Thus, the debtor's counterclaims seeking damages for negligence and breach of contract were intertwined with the debtor's objection to the defendant's proof of claim and "an inextricable part of the claims allowance process." *Id.*

In the course of the ruling in *Germain*, the Second Circuit cited *Frost* with apparent approval: "To the extent that [*Frost*] is suggesting that the debtor was essentially objecting to the

- 8 -

allowance of the attorney's claim and that the debtor's success meant the disallowance of the attorney's claim, we agree that the debtor's objection was part of the claims allowance process." 988 F.2d at 1330, fn. 9. The Second Circuit's dicta in *Germain* suggests that where the debtor answers its former law firm's proof of claim with a counterclaim for malpractice that is an "inextricable part of the claims allowance process," the law firm is not entitled to a jury trial on the malpractice claims.

Another analogous case is *In re CBI Holding Co., Inc.*, 311 B.R. 350 (S.D.N.Y. 2004). The creditor in that case, Ernst & Young, filed a proof of claim in the debtor's bankruptcy proceeding for unpaid auditing and consulting services totaling $210,850. After confirmation of the debtor's plan, the disbursing agent objected to the claim and asserted various counterclaims against Ernst & Young in excess of $70 million, including claims that arose in favor of the debtor for negligence, breach of contract and fraud. Ernst & Young demanded a jury trial. Judge Wood found the debtor's claims for negligence, breach of contract and fraud were "factually and legally interconnected with Ernst & Young's Proof of Claim" and with the debtor's objection to that claim. 311 B.R. at 362. In addition, the court found it significant that the claims of fraud in connection with reaudit work would "affect the allowance or disallowance of Ernst & Young's Proof of Claim," which concerned fees due for services performed in connection with the reaudit; the debtor's remaining claims were "based upon the same operative facts as the reaudit fraud claim and expungement claim, and were filed in response to Ernst & Young's Proof of Claim, which is based on the same set of facts". 311 B.R. at 362-363. Judge Wood therefore concluded that the claims were "integrally related to the allowance of Ernst & Young's Proof of Claim," even though the parties agreed that the tort and contract claims asserted against Ernst & Young were "traditionally legal in nature." *Id.* at 365-366. The court gleaned the following rule from *Granfinanciera* and *Langenkamp*:

> [A] creditor's right to a jury trial on traditionally legal claims arising in an adversary proceeding depends on: (1) whether the creditor has filed a proof of

claim against the bankruptcy estate . . .; and (2) whether the resolution of the proceeding affects the allowance of the proof of claim.

*Id.* at 365 (citations omitted).

In *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir. 1994), the Third Circuit denied the debtors' request for a jury trial on a legal malpractice action commenced by the debtors.[4] The malpractice action was commenced by the debtors following a fee application by their former law firm. The debtors also objected to the fee application on the ground of legal malpractice. Denying debtors' request for a jury trial, the Third Circuit found that the debtors' malpractice action mirrored the objection to the allowance of attorney's fees such that the "close connection between the malpractice action and the objections to fees leads us to conclude that the debtors' allegations of malpractice are part of the process of allowance and disallowance of claims." *Id.* at 1252. As part of its ruling, the Third Circuit noted that "[a]n attorney's claim for pre-petition fees and the debtor's objections and counterclaims based on negligence and breach of contract '[c]learly . . . arise [] out of the claims allowance process'." *Id.* at 1253 (quoting *In re Frost, supra,* 145 B.R. at 882) (alteration in original). Relying on *Granfinanciera*, the Third Circuit rejected as misplaced the debtor's "emphasis on the fact that the malpractice complaint seeks money damages in addition to disallowance of attorney's fees." *Id.* at 1252, fn. 17.

> The Supreme Court stated in *Granfinanciera* that "once a creditor has filed a claim against the estate, the bankruptcy trustee may recover the full amount of any preference received by the creditor-claimant, even if that amount exceeds the amount of the creditor's claim." 492 U.S. at 60 n. 14, 109 S.Ct. at 2800 n. 14. The logic is equally applicable to the situation presented to us here.

*Id.*

This Court previously held, in its July 26, 2005 memorandum decision, that "the counterclaims are core because they arise from the same transaction as the proofs of claim filed

---

[4]   The Third Circuit held that this ruling would be equally applicable had the request been made by the defendants:

> Clearly, if the attorneys in this case had demanded a jury trial, their request would be refused on the ground that they had filed a claim for fees with the bankruptcy court. Under the facts, we see no reason to treat the debtor's request differently.

*Id.* at 1253.

by Claimants," that they are "logically related," and that it would conserve judicial resources to try the objections to claim and the counterclaims together. The Court now reaffirms these findings and holds that the counterclaims bear directly on the allowance of the claim so that the equitable exercise of allowance or disallowance of the claims in the bankruptcy case cannot be accomplished without consideration of the Counterclaims. The very services for which Claimants seek compensation in their proofs of claim are the same services, for the same time periods during which the Debtor counterclaims that the Claimants engaged in negligence and malpractice. The counterclaims are therefore integrally related to the allowance or disallowance of the claims. As a consequence, regardless of whether the counterclaims are traditionally legal or equitable in nature, the counterclaims have been converted to an equitable dispute. *See, e.g., Germain*, 988 F.2d at 1329 (loss of right to jury trial is "not so much on a theory of waiver as on the theory that the legal issue has been converted to an issue of equity"); *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d at 1253 (no right to jury trial "not because of specific waiver of Seventh Amendment rights, but because their claim has been converted from a legal one into an equitable dispute over a share of the estate"). Because the counterclaims are integrally related to an equitable dispute involving the claims allowance process, the Claimants are not entitled to a jury trial.

## CONCLUSION

The Debtor is requested to promptly submit an order consistent with this memorandum decision.


Dated: Poughkeepsie, New York
       October 14, 2005

                                                    /s/ Cecelia G. Morris
                                                    U. S. B. J.